IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM R. RISNER                                              PLAINTIFF


          v.                          CASE NO.        12-2191


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                             DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).


### I.  Procedural Background:

The plaintiff filed his applications for DIB and SSI on April 21, 2010, alleging an onset

date of February 13, 2010, due to plaintiff's Herniated Discs, Bulging Discs, and Legs going to

sleep. T. 174.  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then

requested an administrative hearing, which was held on April 5, 2011.  Plaintiff was present and

represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael
J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 41 years of age and possessed a High School education.  The Plaintiff  had past relevant work ("PRW") experience as a Plumber's helper, Home Health Aide, and Maintenance worker  (T. 176).

On May 10, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's  right shoulder disorder status post subacromial decompression, and degenerative disk disease of the lumbar and thoracic spine did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to light work with limitations.  T. 13.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as Convenience Store Clerk, Storage Facility Rental Clerk, and Furniture Retail Clerk. .  T. 19.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

### A. Step Two Evaluation:

The Plaintiff first contends that the ALJ erred at Step Two of the sequential process because he found that the Plaintiff's "neck impairment was non-severe". (ECF No. 11, p. 17).

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996).

The ALJ specifically found that the Plaintiff had "degenerative disk disease of the lumbar and thoracic spine" (T. 12) but he specifically found that the Plaintiff's "remote anterior cervical diskectomy and fusion" had no more than a minimal limitation on the Plaintiffs's ability to perform basic work activities.

On March 13, 2007 Dr. Standefer, the Plaintiff orthopedic surgeon, stated that the Plaintiff was doing well after his surgery and he released him to return to work on March 19, 2007. (T. 511). It appears that the Plaintiff returned to full time reportable employment for 2007 and 2008 (T. 140). While there are no earnings records for 2009 it appears that the Plaintiff was employed because he told his treating physician that he injured his right shoulder on October 4, 2009 "while vacuuming at work". (T. 703).

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). The Plaintiff has failed to establish any error by the ALJ at Step Two.

**B. Residual Functional Capacity:**

1. Credibility

The Plaintiff contends that the ALJ erred in his assessment of his credibility. (ECF No. 11, p. 18). In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v.*

-4-

*Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)).  In his Function Report, Plaintiff reported – I haven't been able to drive or go anywhere because it's too painful. (Tr. 189). Reported problems dressing – I have to sit down to get dressed; Bathe: difficulty getting in and out of the shower because I can't stand very long. I need to have help in and out of the tub; Care for hair – it hurts when I lift my arm over my head – it pulls my lower back – my wife helps me; Shave – I sit down to shave; I sit down to urinate. It hurts to put on my shoes and socks because it pulls on my lower back. (Tr. 190). I have to sit on a stool to cook any meals; my boys have to get pots and pans for me; cooking takes longer than normal. (Tr. 191). I am not able to do any cleaning, moping, or yardwork; I sit on stool do get clothes in and out of dryer. I cannot drive because my feet go to sleep. (Tr. 192). When I got to get groceries, I ride in a cart because I can't walk that long. I get upset very easy with family, friends, neighbors – because of the pain, it effects my mood. (Tr. 194). When I go out I have to use a wheelchair. (Tr. 195). The record supports that Plaintiff may have had a lower pain threshold than others, "he is rather intolerant of pain." (Tr. 631).

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms he found were not credible to the extent they are inconsistent with the determined  RFC (T. 14).

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage,

effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004)

a.  Work History

The Plaintiff has a consistent work history from 1991 to 2009. (T. 139-140).  *See Wildman v. Astrue,* 596 F.3d 959, 968-69 (8th Cir. 2010) (ALJ may consider a claimant's sporadic work history when determining credibility). There is nothing in the Plaintiff's work history that would cause the ALJ to discount the Plaintiff's credibility.

b.  Observations by treating and examining physicians

The ALJ makes reference to the Plaintiff's chronic numbness and tingling in his legs but notes that the medical reports do not support the Plaintiff's claims.  Dr. Ted Honghiran, an orthopedist, who examined the Plaintiff on December 6, 2010, found that the Plaintiff had "good range of motion to 60 degrees of flexion with negative straight leg raise in both legs and he has normal reflex and sensation. There are no acute muscle spasms noted. The reflex  and sensation is intact." (T. 626).  Dr. Honghiran felt that the Plaintiff would recover from his injury and be able to return to work. (Id.).  Dr. Evans, an orthopedic surgeon, who performed rotator cuff surgery on the Plaintiff authorized him to return to work on October 29, 2010, but lifting no more than 20 pounds and no lifting above the waist. (T. 720).

Dr. Gustafson, a neurologist, saw the Plaintiff on December 16, 2010 and noted the

Plaintiff had "mildly reduced ROM" with no tenderness in the thoracic spine but moderate pain with motion in the lumbar spine". He had full ROM in both shoulders. (T. 730). Dr. Gustafson noted that he will be considering "ncv/emg". (T. 731). In March 2011 Dr. Gustafson again saw the Plaintiff and he had reviewed the MRI of the Lumbar spine dated 2/26/10[2] and he agreed with the report. His options were to "complete the definitive eval with CT/myelo lumbar spine and Bil LE NCV/EMG". (T. 722). The doctor's notes that the Plaintiff "will consider options re: funding" (Id.). Dr. Gustafson's note of May 2012 notes that "There appears to be no medical options for improving his status as there is no funding for rehabilitation program", (T. 766). While Dr. Gustafson appears to have felt that an NCV/EMG was necessary for his evaluation of the Plaintiff's condition one could not be obtained because of the Plaintiff's financial condition.

The ALJ stated  "that there is no objective evidence such as a nerve conduction study within the medical evidence of record" (T. 15) to substantiate the Plaintiff's claims of numbness in his feet and his inability to stand for such a short time. This issue was central in the Plaintiff's case. The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)).

Since the ALJ put great weight on the lack of a NCV/EMG test and discounted the credibility of the Plaintiff because one was not in the record the court believes remand is

---

[2]MRI Lumbar Spine: Impression a central disc protrusion Tl2-Ll.  L4-5 mild diffuse disc bulge contacting the bilateral transiting L5 nerve roots with a superimposed left paracentral disc protrusion. (T. 426).

necessary to allow the ALJ to secure a NCV/EMG test.

 2.  RFC Evaluation

The only Physical RFC evaluation in the file is by a non-examining consultive physician, Dr. Keith, who, on May 20, 2010 found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could stand and/or walk and sit for 6 hours in an 8-hour workday. (T. 476).  The only other limitations were to his ability to reach in all directions. (T. 478).  There was no Medical Source Statement for the non-examining consultive physician to review. (T. 481).

 We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id., *Cox v. Barnhart*  345 F.3d 606, 610 (C.A.8 (Ark.),2003)

In this case the treating physician, Dr. Griffin, provided an Attending Physician's Statement on May 11, 2010 diagnosing the Plaintiff with Lumbar pain and neuropathy of the lower extremities. (T. 489). Dr. Griffin felt that the Plaintiff could be expected to miss four days of work per month, would need unscheduled breaks, would require a sit/stand option, and would not be able to work 8 hours per day for 40 hours per week. (T. 489).  A treating physician's opinion "is entitled to substantial weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" *Perks*, 687 F.3d at 1093-94 (*quoting Kirby v. Sullivan*, 923 F.2d 1323, 1328 (8th Cir. 1991)).

In this case the MRI of the Lumbar Spine (T. 426) and the MRI of the Thoracic Spine (T.

-8-

424) provide some support for Dr. Griffin's opinion. Dr. Gustafson, the Plaintiff's treating neurologist, diagnosed the Plaintiff with Cervical, Thoracic and Lumbar pain, DDD (but no surgical intervention in indicated and not expected to improve". (T. 767). In May 2012 Dr. Gustafson felt that the Plaintiff would "not be able to return to work" (T. 766). The Secretary's regulations for evaluating medical opinions specify, "We generally give greater weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5). *See also Brown v. Astrue*, 611 F.3d 941, 953 (C.A.8 (Ark.),2010)

No one, however,  obtained a physical RFC Assessment from Dr. Gustafson. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010).

In this particular case the crucial issue is the effect that the Plaintiff's back disorders have upon his ability to stand and/or sit in the work place. The court believes remand is necessary to allow the ALJ to obtain a NCV/EMG test and to obtain a Physical RFC assessment from the Plaintiff's treating Neurologist, Dr. Gustafson.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this September 3, 2013.


*/s/ J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE